John B. Tatro, Admr.,

vs.

Maine Central Railroad Company and Trustee.

Penobscot.    Opinion October 9, 1911.

*Cases on Report.    Review.    Master and Servant.    Negligence.    Contributory Negligence.    Burden of Proof.    Evidence.*

On report of a cause by agreement where the presiding Justice orders a nonsuit, the Supreme Judicial Court will inquire, not whether there was sufficient evidence for the jury, as in the case of exceptions, but whether, on all the evidence, giving it the weight that a jury ought to give it, the plaintiff is entitled to recover.

In an action for death of a railway employee, *held* that the burden was on the plaintiff to show that the decedent's own negligence did not contribute to the accident.

In an action for death of a railway employee, evidence *held* insufficient to show negligence of the company in delaying medical treatment, etc., after the accident, even if it be assumed that the company was legally bound to furnish such treatment.

In an action for death of a railway employee, upon the like assumption, *held* that the burden was on the plaintiff to show negligence in delaying medical treatment, etc., after the accident.

On report.    Judgment for defendant.

Action on the case to recover damages for personal injuries sustained by the plaintiff's intestate, Alfred Tatro, while in the employ of the defendant railroad, and caused by the alleged negligence of the defendant.    The record shows that Alfred Tatro was 17 years and 10 months old at the time of the injury.

Plea, the general issue.    At the conclusion of the plaintiff's evidence, the presiding Justice ordered a nonsuit and the plaintiff excepted.    Thereupon it was agreed that the case should be reported to the Law Court for decision upon so much of the evidence as was competent and legally admissible.

The case is stated in the opinion.

*John E. Nelson*, for plaintiff.

*Forrest Goodwin*, and *White & Carter*, for the defendant railroad.

*Hugh R. Chaplin*, for trustee.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

SAVAGE, J.   This is an action on the case for personal injuries. At the conclusion of the plaintiff's evidence the presiding Justice ordered a nonsuit, to which order exceptions were taken and allowed. Thereupon by agreement of the parties the case was reported to the Law Court for decision upon the evidence.   We are therefore to inquire, not whether there was sufficient evidence to require the case to be submitted to a jury, as we should have to do if the case were heard upon the exceptions, but whether, upon all the evidence, giving it the weight and effect that a jury ought to give it, the plaintiff is entitled to a verdict.

The plaintiff's intestate, Alfred Tatro, was in the employment of the defendant, and at the time he received his injuries was working in the defendant's freight yard at the Northern Maine Junction.   He was assisting in shifting cars.   A locomotive was attached to a train of six or seven cars.   It was desired to take out the first one back of the locomotive.   It was undertaken to do this by "kicking" back all the cars in the rear of the first car onto one track, and then switching the first car onto another track.   By this process, after the locomotive had set the train in motion backwards, and while it was in motion, it was the duty of Tatro to uncouple the first from the second car by lifting or operating a lever rod on the second car.   If everything worked as it should, this would pull the pin in the draw bar between the cars, the cars would thereby become uncoupled, and the cars behind the first one, (or in front of it as they were going), would proceed along the track by their acquired momentum.   Thus they would be "kicked back."

This accident occurred in the night.   It was very dark.   Tatro was on the ground and had a lantern.   He gave the signal to the

engineer to back the train. That was the last seen of him until after he was hurt. It is probable that he undertook to uncouple the cars, and in some way slipped or fell under them. No part of the accident was seen by anybody, and no one knows what Tatro was doing when he got hurt. But when the locomotive got back to where he was, it was found that he had been run over, and his left thigh crushed, but not entirely cut off. Examination showed that the coupling pin which Tatro is supposed to have been trying to lift by means of the lever stuck fast so that the lever could not lift it. It was found in that condition after the accident.

In the first count in his writ, the plaintiff alleges that the coupling was defective, that the defendant negligently allowed it to be so, and that Tatro was injured by reason of the defect, so negligently allowed to exist. In the second count, it is alleged that Tatro was young and inexperienced, and that it was the duty of the defendant, not only to furnish him with reasonably safe appliances with which to work, but also to warn and instruct him with regard to the perils of the work, which it negligently failed to do. In argument, the plaintiff does not rely strongly upon either of these counts. It is not necessary to consider now whether the defendant was negligent as charged in these counts. For in any event, so far as they are concerned, the plaintiff must fail upon another ground. The rule is well settled in this State, that when a plaintiff seeks to recover for injuries caused by the defendant's negligence, the burden is on him to show affirmatively that no want of due care on his own part contributed to the injuries. *McLane* v. *Perkins*, 92 Maine, 39; *Day* v. *Boston & Maine R. R.*, 96 Maine, 207. If there is no proof either way, the plaintiff cannot recover. It is incumbent on the plaintiff in this case to show that Tatro's own negligence did not contribute to his injury. That he has not done, and unfortunate as it may be, cannot do. No one saw the accident, and there is nothing in the case which indicates in any way, in what manner, or by what cause, Tatro got under the car wheels. And that being so, it is useless to speculate as to how it might have happened. Therefore the suit is not maintainable under either of the first two counts.

But in a third count, the plaintiff alleges that Tatro at the time of the accident was far from medical aid, and that by reason of the accident he was in imminent danger of bleeding to death; "that the exigency made immediate action imperiously necessary; that it thereby became the obvious and imperative duty of the defendant to procure medical aid for him at the earliest possible moment; that the defendant assumed said duty and undertook its fulfilment; but having undertaken it, that it failed to use due care and diligence in the discharge of the duty which it owed, and which humanity dictated; but so negligently and wantonly performed said duty that Tatro lost his life thereby, and suffered great anguish of body and mind."

Under these allegations, and upon the proof, the plaintiff contends, first, that "the strict necessity and urgent exigency of this case placed upon the defendant the duty of caring for Tatro after his injury with a proper regard for his safety and the laws of humanity," and, secondly, that "whether or not the law imposed upon the defendant the duty of so caring for him, the duty was assumed by the defendant, and having been assumed and its performance actually entered upon, the defendant was obliged to discharge the duty "with reasonable care;" that it performed the duty negligently to the injury of Tatro, and hence is liable in this action.

We do not find it necessary to consider or determine the correctness of the plaintiff's propositions of law. For, assuming, but not deciding, that the law is as claimed by him, we think the action cannot be sustained upon the facts.

The facts bearing upon this branch of the case, as we gather them from the evidence, are these. The accident occurred at about 11:25 o'clock at night, and at a place in the yard nearly half a mile from the defendant's station at Northern Maine Junction. The engineer of the shifting locomotive at once sent his fireman and a brakeman on the locomotive to the station. They reached the station and notified the yard master at about 11:28 o'clock that Tatro had had his leg cut off. The yard master notified the train dispatcher at Waterville, who had charge of the running of trains upon that division, and asked for orders to take Tatro from Northern Maine

Junction to Bangor, a distance of about five miles. Instead of ordering the yard master to take him in, the train dispatcher ordered him to send Tatro in to Bangor on a freight train which was just then arriving at Northern Maine Junction from the west, and which had the right of way as far as the Bangor yard. This freight train took Tatro in the caboose, and left the Northern Maine Junction yard for Bangor at 11:45 o'clock, or about twenty minutes after the accident. A brakeman was sent with Tatro. The train was running extra from Northern Maine Junction, and consequently had to flag through the Bangor yard. This meant, of course, that it had to go slowly through the yard. How long it took to make the run to the Bangor yard, and how long to run through the yard to the station, is not clearly shown. The brakeman estimates that it took ten minutes to run to the yard, and that they were delayed at the semaphore about twenty minutes, before proceeding through the yard. At the same time he testified that they reached the Bangor station about twelve o'clock. We think it was probably as late as 12:05 or 12:10. We think so because Dr. Robinson testifies that he was telephoned to from the hospital, as we understand his testimony, "at midnight or a little after," and asked to go to the hospital to attend upon Tatro. Also, the driver of the hospital ambulance testifies that he was telephoned to, presumably from the hospital, to go to the station for Tatro ; that he got the call "right around a little after twelve o'clock ;" that he took ten to fifteen minutes to harness and get started, and three minutes to drive from the stable to the station, and that he arrived at the station at 12:25. Necessarily the hospital authorities had been communicated with before they telephoned to the doctor and the ambulance driver. And taking the whole situation into account, we think it is fair to assume that the hospital was notified after Tatro reached the Bangor station. Meanwhile Tatro had been placed in the baggage room. Although the engineer at the Northern Maine Junction yard had bound a bell cord around his leg as tightly as he could to prevent hemorrhage, he was losing blood and growing weaker. Dr. Holt had been sent for, but by whom it does not appear. He arrived at the station about twenty or twenty-five minutes after

Tatro did, but not until after the ambulance arrived. For some reason, not explained in the testimony, Tatro was not put into the ambulance until twenty or twenty-five minutes later. But finally, after he had lain in the baggage room from between three-quarters of an hour to an hour, he was taken to the hospital. There his leg was amputated. He died at 4:45 that morning from "shock and hemorrhage."

This is an unsatisfactory account of what happened after Tatro reached Bangor,—unsatisfactory, because as to most of the points of time we have to rely upon the mere estimates of witnesses, and estimates not entirely harmonious. But the foregoing statement, made after a close scrutiny of such evidence as we have, represents our conclusions.

It appears then that about twenty or twenty-five minutes after Tatro reached the Bangor station, a reputable surgeon and an ambulance procured by someone were in attendance, and there seems to be no ground for charging negligence upon the defendant after that. Nor do we think that the defendant is chargeable with negligence after the train reached the station, if within twenty or twenty-five minutes, at the midnight hour, a surgeon and an ambulance had been procured. That would seem to indicate reasonable diligence, especially if, as appears to be probably true, the hospital authorities were set to work immediately after the arrival of the train. The hospital had surgeons and it had an ambulance. And if upon call, the hospital authorities undertook to care for Tatro, and their acts indicate that they did, we think the defendant was justified in relying upon such an undertaking, and would not be liable for any such delays in reaching Tatro as are shown in this case. And in point of fact, we are impressed with the belief that if there was any unreasonable delay in Bangor, the delay was that of the ambulance driver, for which the defendant is not responsible.

So much relates to negligence after the train reached the Bangor station. But the plaintiff contends that reasonable care and diligence required the defendant to send Tatro immediately to Bangor where he could receive surgical and hospital treatment, and particularly so to arrange the use of its tracks that there should be

no delay in running through the Bangor yard. It is also contended that the defendant should have telegraphed from Northern Maine Junction to Bangor and had a surgeon and an ambulance in attendance when Tatro arrived there. It is doubtless true that if the train which bore Tatro could have run through the Bangor yard without delay it would have reached the Bangor station at about twelve o'clock ; and if a surgeon and ambulance had then been in attendance he might have been saved about a half hour of suffering. Since there can be no recovery for loss of life, that is the extent of the defendant's liability in any event.

It is shown that the extra freight which took Tatro could reach Bangor in less time than it would take to make up a special and send it in, so no fault can be attributed to the defendant for sending him in on the freight. It is not shown what other efforts, if any, the defendant made to get him into Bangor station quickly, nor whether in the limited time it was possible to get a clear track through the Bangor yard. The burden of showing a negligent lack of effort, and the consequent injury to Tatro, is upon the plaintiff. That burden is not sustained. From the mere fact that the train was delayed probably from ten to twenty minutes in passing through the yard, we do not think it can properly be inferred that the delay was due to the negligence of the defendant. Even a slight familiarity with a large railroad freight yard at night, with making up trains, shifting trains, dispatching trains, shows that such an inference would be mere guess work, a choice among possibilities.

Lastly, did due care and diligence require the defendant to telegraph ahead to Bangor for a surgeon and ambulance? We feel constrained to answer the question in the negative. Bangor was only about five miles distant. A train started to carry Tatro there within twenty minutes after he was hurt. The hospital ambulance was, it seems, within three minutes drive from the station. The case does not show that the presence of a surgeon at the station was necessary, though it may have been useful. So far as appears, Tatro might have been taken to the hospital as soon as the ambulance arrived. With such expectations of obtaining speedy surgical help as the defendant's servants might reasonably have in such

a city as Bangor, under the conditions which existed there, we do not think that failure to telegraph should be regarded as want of reasonable care.    Nor, in saying this, do we overlook the urgency of the situation.    The defendant, indeed, in argument contends that it is not shown by the evidence that its servants did not telegraph, and therefore that the plaintiff must fail on this ground from lack of proof.    But we have assumed that they did not telegraph.

We do not discover any valid ground upon which the plaintiff can recover.

*Judgment for the defendant.*